UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SUNOCO, INC. (R&M)
    Plaintiff,

v.                              C.A. No.:

ASSOCIATION BENEFITS
INSURANCE AGENCY, INC.;
HERMITAGE INSURANCE
COMPANY; JAVAID A. BUTT;
EAGLE BROTHERS, INC
d/b/a CENTRE AVENUE SUNOCO;
and GERALD M. HURLEY
    Defendants.

04 12132 GAO

MAGISTRATE JUDGE Collings

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

### INTRODUCTION

Plaintiff, Sunoco, Inc. (R&M) ("Sun"), asserts the following complaint for Declaratory and Other Relief:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action wherein the matter in controversy exceeds the value of $75,000 (exclusive of interest and costs) and is between citizens of different states.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), since the events giving rise to Sun's claims occurred and the location of the Premises (described below) are within this judicial district.

## PARTIES

3. Sun is a business corporation organized under, a citizen of, and having its principal place of business in Pennsylvania. At all times mentioned herein, it has been duly authorized to transact business in the Commonwealth of Massachusetts.

4. Upon information and belief, defendant, Association Benefits Insurance Agency, Inc. ("the Agent") is a domestic Massachusetts profit corporation and citizen of the Commonwealth, having its principal place of business in Springfield but also transacting business from an address in the City of Boston.

5. Upon information and belief, defendant, Hermitage Insurance Company ("Hermitage") is a business corporation, organized under, a citizen of, and having its principal place of business in New York. At all times mentioned herein, it has also been authorized to transact business in the Commonwealth of Massachusetts.

6. Upon information and belief, defendant, Javaid A. Butt (sometimes hereinafter referred to as either "the Dealer" or "Butt") is a resident and citizen of Quincy, Massachusetts.

7. Upon information and belief, defendant, Eagle Brothers, Inc. (sometimed hereinafter referred to as "Eagle") is also a domestic Massachusetts profit corporation and citizen of the Commonwealth, having its principal place of business at 336 Central Street, Abington, Massachusetts ("the Premises").

8. Upon information and belief, defendant, Gerald M. Hurley ("Hurley") is a resident and citizen of Whitman, Massachusetts.

9. Some or all of the defendants have been joined in this action in accordance with 28 U.S.C. § 2201, in that they have, claim, may have, or may claim, an interest that would be affected by the Declaration of this Court.

## FACTUAL BACKGROUND – A PLUS AGREEMENT

10. On or about April 25, 2002, Sun and the Dealer entered into a so-called "A Plus Agreement (lessee)" for the Premises ("the Agreement").

11. By its terms, the Agreement commenced on May 1, 2002 for a five (5) year term ending on May 1, 2007.

12. Section 2.07(C)(10) of the Agreement provided that the Dealer agreed during its term to "keep the Premises….free and clear of….obstructions which may ……endanger customer safety".

13. Section 2.07(C)(12) of the Agreement provided that the Dealer agreed during its term to "keep the Premises in an acceptably …..healthful condition, free of ice, snow or other dangerous conditions…".

14. Section 2.07(D)(2)(C) of the Agreement provided that the Dealer agreed during its term to "notify (Sun) immediately in writing of any unsafe conditions".

15. Section 2.08(A) of the Agreement provided that the Dealer agreed during its term to "exercise and be responsible for the exclusive control of the Premises and all activities conducted thereon". It further indicated that the Dealer "shall undertake all obligations hereunder as an independent contractor".

16. Section 2.11(A)(5) of the Agreement provided that during its term the Dealer agreed to be responsible "to remove all debris from (the) Premises…including snow and ice".

17. Section 2.11(A)(6) of the Agreement provided that during its term the Dealer agreed to "promptly report to (Sun) all physical damage to the Premises…".

18. Section 2.11(A)(7) of the Agreement provided that during its term the Dealer agreed to be solely responsible for "all other maintenance and repairs of which (Dealer) fail(s) to notify (Sun) within five (5) business days after the damage occurs or (Dealer) first become(s) aware of the necessity for such maintenance or repairs…".

19. Section 2.12(A) of the Agreement provided that during its term the Dealer agreed to "maintain the Premises…in a clean, neat, orderly…safe…condition".

20. In pertinent part(s), Section 2.16(A) of the Agreement provided that during its term the Dealer agreed to "fully protect, default, reimburse, indemnify, and save harmless (Sun)... from and against any and all claims, liabilities, litigations, expenses, losses, demands, damages, fines, and causes of action any injury to any person... resulting in any way from but not limited to... the (1) operation of (Dealer's) business and condition of the Premises, driveways (and) walkways".

21. Section 2.16(B) of the Agreement provided that during its term the Dealer agreed to "further indemnify and reimburse (Sun) for... (1) costs, expenses, and fees (including court costs and reasonable attorney's fees) incurred by (Sun) relating to litigation undertaken successfully by (Sun) against (Dealer) to enforce... (the Agreement)".

22. Section 2.16(D) of the Agreement provided that during its term the Dealer would "not be liable to (Sun)... for claims, losses, and damages caused by or arising <u>solely</u> out of negligence of (Sun)...." (emphasis supplied).

23. Section 2.16(E) of the Agreement provided that during its term the Dealer would "keep and maintain in full force and effect <u>insurance</u> through a financially responsible carrier... acceptable to (Sun) which is primary to any other valid collectible insurance" and that Sun "<u>must be included as an additional insured on all policies</u>" (emphasis added).

24. Section 2.16(E)(1) of the Agreement provided that during its term the insurance coverage described in the preceding paragraph of this complaint would provide coverage "with a minimum limit of at least $500,000.00 for bodily injury…".

25. Section 2.16(E) of the Agreement provided that during its term the Dealer would provide Sun certificates of insurance and that the Dealer would "keep said insurance coverage in full force and effect during (the term of the Agreement)".

26. Section 2.17(A) of the Agreement provided that during its term Sun would have the right (but was not obligated) to enter the Premises to conduct (among other things) inspections and maintenance.

27. Section 2.20(A)(14) of the Agreement provided that during its term (and in addition to any other remedies it might have), Sun has the right to terminate or non-renew the Agreement due to the Dealer "(n)ot maintaining required insurance coverage and supplying (Sun) with current insurance certificates".

28. Section 2.27(C) of the Agreement provided that the failure of Sun or the Dealer to "require performance of any provision of (the Agreement) shall not affect either party's right to require full performance… at anytime thereafter…".

29. Section 3.01(A) of the Agreement provided that during its term the Dealer "being in possession and control of... Premises, has <u>primary</u> responsibility to keep and maintain (the Premises) in good order and condition at all times" (underscoring furnished).

30. Section 3.01(C) of the Agreement provided that during its term the Dealer agreed that Dealer's notifications to Sun of a "need for repair, and assumption by (Sun) of responsibility for repair, shall not relieve (Dealer) of any liability incurred to third parties... because of a state of disrepair".

31. Upon information and belief, Butt, individually or in concert with another person or persons, formed or caused Eagle to be formed and incorporated for the purpose of transacting business at the Premises.

32. Notwithstanding its creation or formation, Eagle never became a party to the Agreement between Butt and Sun.

33. Upon information and belief, Butt sought and obtained a policy of commercial liability insurance through the One Beacon Insurance Co., ostensibly comporting with the aforementioned premises of sections 2.16 E and 2.16 E(1) of the Agreement.

## FACTUAL BACKGROUND - INSURANCE POLICIES

34. On or about May 30, 2002, Sun became an additional insured and certificate holder under a policy of liability insurance for the Premises issued by the One Beacon Insurance

Co. that listed Eagle as a named insured under and for a policy period or term of May 20, 2002 through May 20, 2003.

35. On or about June 19, 2002, the Dealer and/or Eagle applied for another liability insurance policy for the Premises through the Agent.

36. The Agent has advised the Dealer, Eagle and Sun that on or about June 19, 2002, it submitted a request to Hermitage for such Premises liability coverage, asking that Sun be named as an additional insured.

37. Upon information and belief, Hermitage issued a liability policy covering certain activities at the Premises as a result of receiving and reviewing such application of June 19, 2002.

38. For a reason or reasons unknown to Sun, the policy issued by Hermitage did not list or include Sun as an additional insured.

39. Upon information and belief the One Beacon Insurance policy described above was terminated and replaced by the new Hermitage Policy.

40. Sun was not advised of the change in the insurance coverage for the Premises.

8

41. Sun was not advised that as a result of the change in policies it was no longer listed as an additional insured under a policy of liability insurance for or with respect to the Premises.

42. Upon information and belief, neither the Agent, the Dealer nor Eagle made appropriate inquiry to confirm that Sun had been listed as an additional insured under the liability insurance policy issued by Hermitage.

43. By letter dated June 25, 2003, Hermitage advised Sun that "just because a request is made to add someone to the policy, doesn't (sic) mean it will be granted by (Hermitage).

## AN INCIDENT AT THE PREMISES

44. Hurley claims that on or about December 7, 2002, he was a customer or business invitee at the Premises.

45. Hurley further alleges that on or about such 7Th day of December, 2002, he slipped and fell on an icy walkway surface at the Premises.

46. Upon information and belief, Hurley further alleges that the Dealer, Eagle and/or Sun are negligent for allowing a "bent and broken" gutter pipe to remain in a state of disrepair, causing "water runoff from the roof to drip onto the walkway and freeze, creating a icy and hazardous condition".

47. A letter from counsel for Mr. Hurley dated January 21, 2003, notified Sun that Hurley was allegedly injured as described above.

48. Upon information and belief, Sun had no prior knowledge of the incident.

49. Upon information and belief, Sun had no prior knowledge that a gutter pipe at the Premises was in a condition that might allow or had allowed water to either escape, be directed toward a walkway, and/or to accumulate and freeze on a walkway at the Premises.

50. Upon information and belief, Sun had no prior knowledge of any condition at the premises that might result in an unnatural accumulation or water, slush and/or ice at the Premises.

51. Upon information and belief, Sun's first notification concerning the gutter pipe in question was received after Mr. Hurley's counsel reported the incident through the letter of January 21,2003 (described above).

## DEVELOPMENTS FOLLING NOTICE OF INCIDENT

52. Following notification of the alleged incident of December 7, 2002, Sun requested that the Dealer and/or Eagle have its insurer respond to the claims of Mr. Hurley pursuant to the Agreement and certificate of insurance that it had previously received.

53. Upon requesting that the Dealer have its insured take the action described above, Sun learned that Hermitage was the new insurer for the Dealer and/or Eagle.

54. Sun thereupon requested that Hermitage respond to the claims of Mr. Hurley, but was advised that it would not do so as Sun was not listed as an additional insured under its policy.

55. Sun subsequently requested that the Agent (through its errors and omissions insurer, if necessary), Hermitage, the Dealer and Eagle take appropriate action to respond to the claims of Mr. Hurley.

56. To date, none of the defendants have agreed to respond to Sun's requests for indemnification under either the Agreement, the policies described above, or otherwise.

57. Hermitage has advised Sun that it will seek Sun's contribution toward the defense and/or resolution of the claims presented by Mr. Hurley.

58. Hurley's counsel indicated that if the coverage disputes are not resolved, his client's claims will proceed into litigation.

59.  Sun is accordingly and improperly faced with the prospect of responding to, defending and/or indemnifying a portion or all of the claims made by Mr. Hurley, contrary to the Agreement and other circumstances described above.

60.  In furtherance of the Court's jurisdiction pursuant to 28 U.S.C. § 1332, this Court also has jurisdiction to allow Declaratory relief pursuant to 28 U.S.C. § 2201.

## REQUESTS FOR REFLIEF

WHERFORE, Sun respectfully prays that this Court:

A.  Construe the facts, Agreement, certificate of insurance, application, policy or policies, and all terms and provisions of the same;

B.  Declare that the Agent, Dealer and Eagle were required to have Sun named as an additional insured under any and all polices of liability insurance relating to the Premises, including specifically the Hermitage policy;

C.  Declare that the failure if the Agency, the Dealer and/or Eagle to assure that Sun was listed as an additional insured under the Hermitage policy estops them from asserting or maintaining any claims against Sun for contribution and/or indemnification with respect to the claims of Hurley;

D.  Declare that the failure of the Agent, the Dealer, and/or Eagle to assure that Sun was listed as an additional insured on a liability policy covering the premises at all times constitutes a breach of the Agreement;

E. Declare that the failure of the Agent, the Dealer, and/or Eagle to assure that Sun was listed as an additional insured on a liability policy covering the premises at all times requires that they fully indemnify Sun for any and all claims, demands, damages, attorney fees and/or costs that Sun may incur by responding to the claims presented Hurley and/or directly or indirectly asserted by Hermitage;

F. Construe the law and matters in question and determine the rights and obligations of parties under these circumstances;

G. Make such further orders that are appropriate in the circumstances, to the end that all parties have clear notice and understanding of the decision and directives of this court and;

H. Pursuant to 28 U.S.C. § 2202, grant Sun such further relief, as may be fitting, just and appropriate in the circumstances, including but not limited to an award of its attorney fees and costs.

Sunoco, Inc. (R&M)
By its Attorney,

John B. Reilly, Esquire (#545576)
John Reilly & Associates
Summit West - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 739-1800
Fax: (401) 738-0258